UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Cr. No. 16-20098

v.

                                    Hon. George Caram Steeh

KHALIL ABU RAYYAN,

           Defendant.
_____/

**REPLY TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION FOR DISCOVERY**

      The government continues to refuse to turn over material portions of the discovery in this case in violation of Rule 16. Contrary to the government's response, this refusal is not limited to the "identity" of the undercover FBI employee ("UCE") posing as "Jannah Bride." The government also claims it has no obligation to disclose how many other individuals working with the government contacted Rayyan and in what manner, or whether the FBI's Behavioral Analysis Unit assisted in helping informants manipulate Rayyan. It also appears to have not yet turned over all of Rayyan's communications with undercover informants for the FBI.

      It is true that discovery (albeit redacted discovery) continues to trickle in,[1] but the limited discovery the defense has received has only intensified counsel's

---

[1] The government's figure of "over 6,000 pages" of discovery, while technically true, is misleading because much of the discovery is duplicative. (R. 60, Pg ID 363.)

1

concerns about the government's extreme manipulation of Rayyan, and strengthened the argument that this discovery is critical to Rayyan's defense.

As discussed in Rayyan's corresponding bond motion, new discovery reveals that the government used a disturbing double-team approach. First, "Ghaada," a 23-year-old Pakistani living in Ohio, agreed to marry Rayyan, and they spent days pronouncing their abiding love for each other. At the FBI's direction, however, Ghaada abruptly ended her relationship with Rayyan, leaving him reeling over the loss of his fiancée. The UCE then contacted Rayyan as "Jannah Bride," taking advantage of the heartache that the FBI itself had created.

The first conversation between Rayyan and Jannah was just disclosed to the defense in the past week and a half. In it, Jannah says she is 19 years old and is depressed because someone very close to her—who she eventually revealed to be her former husband, a fighter for ISIL—died in Raqqa in Syria. She said that she was thinking of killing herself, but she had a dream that "a big bright bird" lifted her out of the grave and, when she woke up, Khalil's Twitter feed was the first thing she saw. It was like an answer to her depression, she wrote. Khalil told her that depression is hard to control but not to hurt herself, to be strong and trust God. The government's twisted use of a suicidal love interest is stunning and underscores the need for full discovery of Rayyan's communications with FBI informants.

In the following weeks, as Rayyan and Jannah continued to talk, Jannah repeatedly attempted to steer the conversation toward a real "Istishhada"

2

(martyrdom) operation, but Rayyan either avoided answering or told Jannah not to hurt herself or anyone else. Jannah recommended that the two text each other using Surespot, an encrypted messaging service, and Rayyan agree. On Surespot, Rayyan naively made a number of untrue, boastful statements in a misguided attempt to exhibit similar convictions as Jannah.

Rayyan's statements in these conversations have been repeatedly, and publicly, used against him in this case, in the initial complaint and as the basis to detain him pending trial. For that reason, the full, unredacted recordings of Rayyan's conversations with "Ghaada" and "Jannah" are critical in preparing Rayyan's defense. The methods the government used regarding these informants are also important to Rayyan's defense and subject to disclosure. In particular, this court should require the government to turn over all discovery and information generated by the FBI Behavioral Analysis Unit and any similar type information generated by any other local, state, or federal agency regarding Mr. Rayyan.

The government concedes that Rayyan's communications with the UCE "fall within the edicts of Rule 16" but insists that a broad "common law privilege" should apply to any discovery that the government deems sensitive or classified. (Gov. Br. at 6–8.) The government also claims that, based on its own review, the redacted portions of discovery are not necessary or critical to Rayyan's defense. (*Id.* at 10.) In support, the government cites *Roviaro v. United States*, 353 U.S. 53, 59 (1957), which recognized a limited privilege for withholding an informant's identity.

3

*Roviaro* does not justify the government's refusal to turn over discovery. As an initial matter, the government fails to explain how unredacted copies of the conversations in which "Jannah" and "Ghaada" were *lying about their identities* would in any way risk revealing those informants' true identities. *Roviaro* is thus inapplicable. Moreover, even if the privilege in *Roviaro* applied, it "is limited . . . by 'the fundamental requirements of fairness.'" *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (quoting *Roviaro*, 353 U.S. at 60). Thus, if "disclosure of an informer's identity, or of the contents of his communication, *is relevant and helpful to the defense of an accused*, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61 (emphasis added). Rayyan has made that showing here because the government has secured his detention by repeatedly, and publicly, portraying him as a mentally ill terrorist based largely on his communications with the UCE. Full disclosure of these communications is necessary to a fair defense against these accusations.

The government pretends as if it made a reasonable request for the defense to agree to a "limited protective order." (Gov. Resp. at 5–6.) As explained in Rayyan's initial discovery motion, that is not true. The government's proposed order would have kept sealed anything that even summarized material the government deemed sensitive. As discussed in *United States v. Stone*, a party seeking to protect information from disclosure must allege specific injury, not merely broad allegations of harm. No. 10-20123, 2012 WL 137746, at *2 (E.D. Mich. Jan. 18, 2012). The

4

government fails to point to any specific risk of harm. "Protective orders are the exception, not the rule, and appropriate reasons must be given for their entry." *Id.* at *3. Courts regularly reject requests for blanket protective orders when, as here, the government fails to pinpoint with particularity the information in need of protection and the harm that would be caused by its disclosure. *See, e.g., United States v. Williams,* No. 15-10145-RGS, 2015 WL 5923551, at *2 (D. Mass. Oct. 9, 2015); *United States v. Garcia*, 406 F. Supp. 2d 304, 307 (S.D.N.Y. 2005). The government's broad protective order also ran afoul of the presumptive right of public access to criminal proceeding. *See United States v. DeJournett*, No. 14-4204, 2016 WL 1239203, at *3 (6th Cir. Mar. 30, 2016). The court should not conduct an ex parte, in camera review of this discovery without first requiring the government to give the defense some indication of what the specific harm would be if the redacted information were revealed.

Additionally, the government provides absolutely no explanation for why pieces of Rayyan's conversations with the UCE—and particularly, portions helpful to the defense—are missing. (*See* R. 51-6, Ex. E.) This problem provides another compelling reason why the defense must be provided full discovery of all communications Rayyan had with informants working with the government, and the methods the informants used. Critically, Rayyan must be allowed to analyze how and why this information might have been deleted, especially since the government continues to present them as evidence of Rayyan's danger to the community.

5

## **CONCLUSION**

The government should not be allowed to continue to throw damaging information from Mr. Rayyan's communications with FBI informants into the public record as evidence of his danger to society without providing him with full, unredacted copies of those communications and disclosing the methods used by the FBI's informants. Rayyan respectfully asks this Court to require the government to produce unredacted copies of all communications between Rayyan and undercover law-enforcement informants pursuant to Rule 16, as well as all discovery and information generated by the FBI Behavioral Analysis Unit and any similar type information generated by any other local, state, or federal agency regarding Rayyan.

Respectfully submitted,

FEDERAL DEFENDER OFFICE
LEGAL AID & DEFENDER ASSN., INC.

/s/ Todd Shanker
TODD SHANKER
todd_shanker@fd.org
(313) 967-5879

/s/ Benton C. Martin
BENTON C. MARTIN
benton_martin@fd.org
(313) 967-5832

Attorneys for Khalil Abu Rayyan
613 Abbott, Fifth Floor
Detroit, MI  48226

Dated:   April 15, 2016

## CERTIFICATE OF SERVICE

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

/s/ Benton C. Martin
Attorney for Defendant
