UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        CASE NO. 16-CR-20098
        HONORABLE GEORGE CARAM STEEH

KHALIL ABU-RAYYAN,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR DISCOVERY (Doc. 51)**

Defendant Khalil Abu-Rayyan is charged in a two-count indictment with making a false statement to acquire a firearm, 18 U.S.C. § 922(a)(6), and possession of a firearm by a prohibited person, 18 U.S.C. § 922(g)(3). Now before the court is defendant's motion for discovery which has been thoroughly briefed by both parties. In addition to defendant's original motion, he also filed a supplemental brief, to which the government filed an additional response, both of which this court has duly considered. Having carefully reviewed all of the written submissions, including papers filed by the government *ex parte*, the court determines that pursuant to Local Rule 7.1(f)(2), it is appropriate to rule on the motion without hearing oral argument.

**A. Background**

The FBI began investigating defendant sometime around July, 2015, when defendant made online threats to commit acts of terror and martyrdom against police officers, churchgoers, and others on behalf of the terrorist organization the Islamic State of Iraq and Levant ("ISIL"). Defendant viewed violent ISIL videos repeatedly and voiced

-1-

his approval of them online. In October, 2015, defendant was arrested for carrying a concealed weapon and possession of marijuana which led to the federal charges against him. The FBI's concerns about defendant's possible terror activity escalated when shortly after his arrest, defendant attempted to purchase a second firearm, sought authorization to carry a concealed firearm, and practiced shooting AK-47 and AR-15 assault rifles. In November, 2015, defendant posted pictures of himself online making an ISIL sign while holding an AK-47. In December, 2015, an individual not involved in the FBI's investigation informed the FBI of Twitter conversations with the defendant. As a result, in December, 2015, over two months after his arrest, the FBI began using an undercover employee ("UCE") to communicate with the defendant. Defendant's text message communications with the UCE involved his professed support of ISIL, his desire to kill and behead others, to skin people like sheep, to set them on fire, and to murder women and children at a Detroit church. He also told the UCE that he heard the voice of Shaytan (Satan) telling him to do evil things like burning people alive. These communications are not relevant to the crimes charged, as the first conversations between the defendant and any government agent occurred at least two months after the dates alleged in the indictment, but were relevant to the court's prior determination of whether to order a competency examination and whether to order detention, and might also be relevant at sentencing.

    Defendant filed his motion for discovery seeking the identity of the UCE and all communications between the UCE and any other undercover employees or confidential informants. The government responds that it has already produced over 6,000 pages of scanned documents on at least 18 CD's and DVD's to defense counsel, numerous

Jencks Act materials well in advance of trial, and the vast majority of the conversations between the UCE and the defendant which are the subject of defendant's motion.  As to certain materials sought by defendant and not already produced by the government, the government has offered to provide the materials provided the defense agree to a limited protective order.  The contours of that protective order as proposed by the government would: (1) prevent the parties from making the discovery materials available to the public, including the media; (2) ensure the identify of the UCE and the individual were not revealed; and (3) the materials be returned to the government after conclusion of the criminal matter.  The protective order proposed by the government would not limit defendant's use of the materials during counsel's investigation and preparation of defenses or even its introduction as evidence at trial, but would only limit defendant's use of the sensitive discovery materials in pleadings by requiring that any filings using the sensitive materials be filed under seal.  Defendant would not agree to any protective order, and instead filed his motion for discovery which is the matter now before the court.

**B. Analysis**

In his motion for discovery, defendant seeks to have the government turn over all communications between himself and the undercover employee ("UCE"),[1] and to identify the UCE, without requiring a protective order.  In response to defendant's motion, the government represents that it has already provided defendant with voluminous discovery, including the vast majority of the conversations between the UCE

---

[1] Defendant refers to the UCE as "Jannah;" however, the government refers to the UCE by acronym only.

and the defendant, prior to the filing of defendant's motion, and more recently, provided additional discovery prior to filing its response. The government responds that the redacted information is privileged pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957), and the government is only obligated to disclose the information sought if the defendant proves the information is essential to his defense. *See Badley v. United States*, 48 F. App'x 163, 167 (6th Cir. 2002) (citing *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.1992)). The government claims the identity of the UCE must be concealed as the UCE has been involved in prior investigations, is currently involved in other investigations, and is anticipated to continue to be involved in other investigations regarding criminal activities, including terrorism charges. The government further contends that public dissemination of this information would compromise terrorism and other criminal investigations by alerting subjects of other investigations that they are targets. Defendant argues the information is critical to his defense as he has been detained based, in part, on his conversations with the UCE, and full unredacted disclosure of those conversations and the identity of the UCE is necessary as the information may be favorable and helpful to him.

In the absence of a protective order to shield the identity of the UCE from the public, the government sought to have this court review the redacted materials *in camera* and *ex parte* to determine whether the materials must be produced during discovery. Federal Rule of Criminal Procedure 16(d) provides:

> **(1) Protective and Modifying Orders.** At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16.  Given this guidance, the court ordered the government to submit a written statement for the court to consider *ex parte*, setting forth the redacted material and the grounds for restricting discovery of the material identified.  The government has now done so and the court has carefully considered the materials submitted *ex parte* and *in camera.*  Having done so, the court concludes that the information sought is not discoverable under Rule 16, relates to issues of national security and counterterrorism, and is protected by the government's common law privilege relating to sensitive or classified information.  Moreover, the redacted materials cannot be considered exculpatory under *Brady* as defendant was a participant in those conversations, and thus, is already aware of the content of those conversations.  *See Abdur'Rahman v. Colson*, 649 F.3d 468, 474 (6th Cir. 2011).

     Defendant argues *United States v. Stone*, No. 10-20123, 2012 WL 137746 (E.D. Mich. Jan. 18, 2012) (Hood, J.) supports his motion, but that case is distinguishable.  In *Stone*, defendant was charged with conspiracy to use weapons of mass destruction, among other charges, arising out of his involvement in an anti-government militia organization known as the Hutaree.  *Id.* at *1.  The government agreed to the early disclosure of witness statements constituting Jencks and *Giglio* material, including grand jury transcripts, but sought a protective order to prevent disclosure to third parties, which included members of the Hutaree.  *Id. at *1-2.*  The court found that the government had failed to show cause for the protective order because it made only broad allegations that witness security was at stake without adequate support for its assertions. *Id.* at *2. Specifically, the court found that "the Government has made no mention of classified information, items affecting national security, or specific allegations

of potential harm." *Id.* at *3. By contrast, this case involves issues of national security and counterterrorism. In its *ex parte* statement filed with this court, the government has set forth adequate reasons for the necessity of a protective order before it must produce the requested materials. For these reasons, defendant's motion for discovery shall be denied.[2]

In support of his motion for discovery, defendant also filed a supplemental brief seeking an order compelling the government to submit as part of its *ex parte* statement for the court's *in camera* review, the following information, which he claims the government must produce during discovery: (1) identification of the agency or department which employed "Jannah" and "Ghaada," (2) identification of whether "Jannah" or "Ghaada" were agents, informants, or some other classification, (3) identification of any other individuals who contacted defendant on behalf of the government, (4) all information generated by the FBI Behavioral Analysis Unit and any similar type information generated by any other local, state or federal agency.

---

[2]Defendant also argues that there are integrity problems with discovery produced to date, citing one example only. In that instance, defendant claims the government produced two copies of a screen shot of an online conversation, but the copies are not identical. The court does not find that this single incongruity calls into question the integrity of the prosecutor. This court is mindful "that the government attorney in a criminal prosecution is not an ordinary party to a controversy, but a 'servant of the law' with a 'twofold aim that guilt shall not escape or innocence suffer.'" *Singer v. United States*, 380 U.S. 24, 37 (1965) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). In light of this judicially recognized concept of the role of prosecutor, the court does not find the single error alleged by the defendant calls into question the integrity of the federal prosecutor here, and this is not a proper basis for ordering the discovery sought.

Defendant does not assert that the materials sought to be produced are relevant to guilt or innocence of the crimes charged, but claims they may relate to his detention or sentencing. Defendant asserts that government agents manipulated him to make statements about his intent and desire to commit violent acts. The court considers each of the four categories of information defendant seeks in his supplemental brief in turn below.

First, the court considers whether the government must produce the identity of the agency that employed "Jannah" or "Ghaada." The government has already disclosed that the government's UCE is an FBI undercover employee. (Doc. 1 at Pg ID 6). As to "Ghaada," the government has already informed defendant that "Ghaada" was not involved with the FBI's investigation of the defendant (Doc. 60 at Pg ID 361) and has no obligation to disclose the agency for whom "Ghaada" may or may not work. This information is not exculpatory and is irrelevant to defendant's detention or sentencing. Thus, defendant's request for this information shall be denied.

Second, the court considers defendant's argument that the government must identify whether "Jannah" or "Ghaada" were agents, informants or some other classification. As to the UCE, the government has already disclosed that the UCE is an FBI undercover employee. As to the classification of "Ghaada," such information does not constitute *Brady* material and is not relevant to the issue of detention or sentencing. Accordingly, defendant's request for this information shall be denied.

Third, the court considers defendant's argument that the government must disclose information about any other individuals who may have contacted him on the government's behalf. The government has assured defendant and this court that it has

-7-

already provided defendant with all communications that took place between the defendant and any person associated with the United States. Accordingly, defendant's request for this information shall be denied as moot.

Fourth, the court considers defendant's argument that the government must disclose any information generated by the FBI Behavioral Analysis Unit and any similar type information generated by any local, state or federal agency. Defendant argues the information constitutes *Brady* material that may support mitigating his sentence by showing that government agents manipulated him into making incriminating statements. The government has assured defendant and this court that the FBI Behavioral Analysis Unit did not provide any advice as to how the UCE or "Ghaada" could elicit incriminating statements of the defendant, and is not aware of any state, local, or federal agency that did the same. Accordingly, defendant's request for this information, which does not exist, must be denied.

### C. Conclusion

For the reasons stated above, defendant's motion for discovery (Doc. 51) is DENIED.

IT IS FURTHER ORDERED that the Clerk file the government's *ex parte in camera* submission dated May 26, 2016, under seal.

**IT IS SO ORDERED**.

Dated: June 9, 2016

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 9, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk