UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Cr. No. 2:16-cr-20098

HONORABLE GEORGE CARAM STEEH

v.

KHALIL ABU-RAYYAN,

        Defendant.

_____/

**GOVERNMENT'S UNCLASSIFIED PORTION OF MEMORANDUM OF LAW AND MOTION FOR AN ORDER PURSUANT TO SECTION 4 OF THE CLASSIFIED INFORMATION PROCEDURES ACT AND RULE 16(d)(1) OF THE <u>FEDERAL RULES OF CRIMINAL PROCEDURE</u>**

## I. INTRODUCTION

The United States of America respectfully moves pursuant to the Classified Information Procedures Act ("CIPA"), Title18, United States Code, App. 3 § 4 and Federal Rule of Criminal Procedure 16(d)(1) for a protective order authorizing it to delete certain classified information from discovery.[1] The classified information at issue is not both relevant and helpful, nor does it contain material that is exculpatory, impeaching, or otherwise discoverable. Moreover, unauthorized

---

[1] This is the unclassified version of this motion being filed electronically on the public docket. All classified information has been redacted from this unclassified version of the motion. A separate classified motion has been filed with the court *in camera* and *ex parte*.

1

disclosure at this time has the potential of harming national security, and as such, the government moves *in camera, ex parte* to delete the classified information from discovery.

The Government is filing this motion and a separate *ex parte* and *in camera* motion pursuant to Section 4 of CIPA. The *in camera, ex parte* procedure contemplated in CIPA Section 4 has been upheld as proper practice. *See, e.g., United States v. Amawi*, 695 F.3d 457, 469-472 (6th Cir. 2012); *United States v. Hanna*, 661 F.3d 271, 294-96 (6th Cir. 2011) ("CIPA 'permits the government to have the trial court examine classified information *in camera* and *ex parte* and determine whether it is necessary for the defense.'") (quoting *United States v. Smith*, 899 F.2d 564, 565 n.1 (6th Cir. 1990)); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (*ex parte, in camera* proceedings under Section 4 of CIPA regarding national security information found appropriate). Further, the prosecutor is ready to personally participate in an *ex parte, in camera* hearing should the Court believe that such a hearing would be helpful. "In a case involving classified documents, . . . *ex parte, in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (citing *United States v. Yunis*, 867 F.2d 617, 620 (D.C. Cir. 1989)). "Such a hearing is appropriate if the court has questions about the confidential nature of the information or its relevancy." *Klimavicius-Viloria*, 144 F.3d at 1261. *See also United States v. Hamama*, 2010 WL 330375, *2 (E.D. Mich. 2010) ("It is well settled that the government may move *in camera* and *ex parte* for a protective order restricting discovery, and that the Court may hold *in camera* and *ex parte* hearings on such motions.") (collecting cases; citations omitted). *See infra*, at pp. 7-8.

## II. STATUS OF THE CASE

On February 16, 2016, a grand jury indicted Defendant Khalil Abu-Rayyan on two counts: (1) making a false statement to acquire a firearm, in violation of 18 U.S.C. § 922(a)(6) (Count 1); and (2) possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(3) (Count 2).

## III. FACTUAL BACKGROUND

On October 5, 2015, Abu-Rayyan purchased a .22 caliber revolver, which was made by Heritage Manufacturing Incorporated, from a sporting goods store in Dearborn Heights. To purchase the firearm, Abu-Rayyan completed a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Form 4473, wherein he was asked "[are] you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" Abu-Rayyan checked, "No," and signed the form.

Heritage Manufacturing Incorporated is headquartered in Miami Lakes, Florida, and does not manufacture any firearms in Michigan. Accordingly, the .22 caliber revolver Abu-Rayyan bought at the sporting goods store in Dearborn Heights travelled in and affected interstate commerce.

On October 7, 2015, Detroit Police Department officers conducted a traffic stop of Abu-Rayyan after watching him violate Michigan's traffic laws. As officers approached Abu-Rayyan's car, Abu-Rayyan made several movements that looked like he was trying to hide something. Officers could also smell what they believed to be marijuana emanating from Abu-Rayyan's car. As a result, officers ordered Abu-Rayyan out of the car and asked him if there was anything in the car. Abu-Rayyan responded, "yes, my gun is in there." After finding the Heritage Manufacturing

Incorporated .22 caliber revolver that Abu-Rayyan purchased in Dearborn Heights, marijuana and other drugs, the officers arrested Abu-Rayyan on state charges.

After waiving his *Miranda* rights, Abu-Rayyan admitted, among other things, that he knowingly possessed the Heritage Manufacturing Incorporated .22 caliber revolver in the car and knew it was wrong. Abu-Rayyan also admitted that officers found his marijuana in the car. He was formally charged with Carrying a Concealed Weapon and Possession of a Controlled Substance (marijuana) by the State of Michigan on November 17, 2015.[2]

On November 30, 2015, Abu-Rayyan was arrested on the formal charges stemming from his encounter with Detroit Police Department officers on October 7, 2015. After waiving his *Miranda* rights, Abu-Rayyan admitted, among other things, that he smoked "four to five blunts" containing marijuana per week since he was 18 or 19 years old. Abu-Rayyan was 21-years old when Detroit Police Department officers arrested him on October 7, 2015. Subsequently, Abu-Rayyan and his family have repeatedly acknowledged Abu-Rayyan's continual drug use and his addiction to marijuana during the time period preceding his purchase of the firearm, and his arrest by the Detroit Police Department.

Following his federal indictment for making a false statement and unlawfully possessing a firearm, the government provided the defendant with virtually all discoverable material, including copies of text messages, Twitter account records, FBI 302's, Detroit Police Reports, Forensic Reports, Computer downloads, screenshots of Abu-Rayyan's cell phone, search warrant results – documents, photographs, emails, and text messages, various recordings of Abu-Rayyan's confessions

---

2 Abu-Rayyan ultimately pleaded guilty to a reduced charge of attempted CCW and was sentence

4

to law enforcement officials, recorded communications with a FBI UCE, as well as other documents and records. However, there exists classified information that the government seeks to delete from discovery because the classified information is subject to the government's classified information privilege and is not both relevant and helpful to Abu-Rayyan, will not be used by the government at trial, is not exculpatory and is not otherwise discoverable.

## IV. DISCOVERY INVOLVING CLASSIFIED MATERIALS

### A. Procedures for Restricting Discovery of Classified Materials

Both CIPA and the Federal Rules of Criminal Procedure provide procedures for a district court to follow when the government seeks to protect classified information from disclosure. *United States v. Amawi*, 695 F.3d 457, 469 (6th Cir. 2012). Federal Rule of Criminal Procedure 16(d)(1) provides that "[a]t any time, the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief," and that "[t]he court may permit a party to show good cause by a written statement that the court will inspect *ex parte*." According to the Advisory Committee Notes, "[a]mong the considerations to be taken into account" when deciding a motion under Rule 16(d)(1) is "the protection of information vital to the national security." Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e).

Congress also provided a mechanism in CIPA for the government to move *in camera* and *ex parte* for permission to restrict discovery of classified information. The purpose of CIPA is "to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir.), *cert. denied*, 537 U.S. 1049 (2002). As the Sixth

on March 14, 2016.

Circuit has explained: "[t]he Act permits the government to have the trial court examine classified information *in camera* and *ex parte* and determine whether it is necessary for the defense." *United States v. Smith*, 899 F.2d 564, 565 n.1 (6th Cir.), *cert. denied*, 498 U.S. 848 (1990). Specifically, CIPA Section 4 states that the government may seek permission to restrict discovery and that "[t]he court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." CIPA Section 4 was enacted "to clarify[] the court's powers under Federal Rule of Criminal Procedure 16(d)(1) . . . because some judges have been reluctant to use their authority under the rule." S. Rep. No. 96-823, 96th Cong.2d Sess. at 6 (1980).

CIPA's legislative history also makes clear that Congress viewed the *ex parte* nature of the proceeding to be important. As the House of Representatives explained, "since the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep. No. 96-831, pt. 1, 96th Cong.2d Sess. at 27 n. 22 (1980). The same is true with respect to Rule 16(d)(1): "it would defeat the purpose of the protective order if the government were required to make its showing in open court. The problem arises in its most extreme form where matters of national security are involved." Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e).

While the *Amawi* Court noted that every court to have considered the issue found CIPA permits *ex parte* proceedings, *see Amawi*, 695 F.3d at 470, several other courts, including the Sixth Circuit in *Hanna*, 661 F.3d at 294, have upheld the *in camera* and *ex parte* nature of motions involving classified information under both Rule 16(d)(1) and CIPA Section 4. *See, e.g., United States v. Aref*, 533 F3.d at 81; *United States v. Mejia*, 448 F.3d 436, 457-58 (D.C. Cir. 2006); ;

6

*United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984); *United States v. Abujihaad*, 2007 WL 2972623, *1 (D. Conn. 2007); *United States v. Libby*, 429 F. Supp.2d 46, 47 (D.D.C. 2006); *United States v. Jolliff*, 548 F. Supp. 229, 232 (D. Md. 1981). In addition, courts have recognized that although Rule 16(d)(1) and CIPA Section 4 speak only of the government submitting a written statement, *"ex parte, in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use," particularly "if the court has questions about the confidential nature of the information or its relevancy. *Klimavicius-Viloria*, 144 F.3d at 1261 ; *see also United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008).

The absence of the defendant or defense counsel from *ex parte* CIPA hearing does not unfairly prejudice the defendant. As the District of Columbia Circuit commented, the *ex parte* nature of the CIPA Section 4 hearing is admittedly a "difficult" situation for both the Court and the defendant, but it is "not without close analogies." *Mejia*, 448 F.3d at 458. This is because, "[w]hen a court (rather than the prosecutor alone, as is ordinarily the case) reviews evidence in camera to determine whether it constitutes a witness statement subject to disclosure under the Jencks Act … or exculpatory material subject to disclosure under *Brady,* the defendant is likewise not entitled to access any of the evidence reviewed by the court … to assist in his argument that it should be disclosed." Id. (citation and quotation marks omitted).

**B. The Government's Classified Information Privilege Can Preclude Discovery of Relevant Evidence.**

The government possesses a common law privilege in classified information. This privilege is similar to that adopted for confidential informants by the Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957). In *Roviaro*, the defendant sought the identity of a confidential informant

who was the "sole participant, other than the accused, in the [drug] transaction charged," in the indictment. 353 U.S. at 64. The Supreme Court recognized the government's privilege in protecting the identity of confidential informants, but held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The Court explained that determining whether the privilege should be breached ultimately "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. In light of the fact that the confidential informant in *Roviaro* "helped to set up the criminal occurrence and had played a prominent part in it," the Court was convinced that his identity must be disclosed to the defendant. *Id.* at 64.[3]

Courts have applied the *Roviaro* standard in cases involving the classified information privilege. *See, e.g. United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989); *See also United States v. Moussaoui*, 382 F.3d 453, 471-72 (4th Cir. 2004) ("In the CIPA context, we have adopted the standard articulated by the Supreme Court in *Roviaro* for determining whether the government's privilege in classified information must give way."). In *Yunis*, 867 F.2d at 617, the government filed

---

[3] The Sixth Circuit has explained that under *Roviaro*, the government is required to disclose information "only upon a showing by the defendant that disclosure is essential to a fair trial." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.1992). "The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by *Roviaro*." *United States v. Sharp*, 778 F.2d 1182, 1186 (6th Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986). In short, the privileged information must be "necessary," "essential," or "critical" to the defense in order for the privilege to be breached. *Badley v. United States*, 48 Fed. Appx. 163, 167 (6th Cir. 2002) (unpublished); *United States v. Coffelt*, 960 F.2d 150 (6th Cir. 1992), *cert. denied*, 506 U.S. 1083 (1993) (unpublished). This standard has been "repeatedly required" by the Sixth Circuit. *Badley*, 48 Fed. Appx. at 167.

8

a motion under CIPA Section 4 to preclude discovery of audio recordings of the defendant's conversations with an undercover law enforcement asset – some of which were relevant to the charges at issue. *Id.* at 623. The district court required the government to disclose the recordings to the defendant, but the District of Columbia Circuit reversed. The court of appeals found that the government possessed a privilege in classified information similar to that articulated by the Supreme Court in *Roviaro*. *Id.* at 622. While some of the recordings were relevant, none of them met the heightened requirements of *Roviaro* and were therefore not discoverable. *Id.* at 624. The court applied the *Roviaro* standard to the classified information at issue:

> [C]lassified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information, like a defendant seeking the informant's identity in *Roviaro*, is entitled only to information that is at least "helpful to the defense of [the] accused."

*Id.* at 623 (quoting *Roviaro*, 353 U.S. at 60-61).

In *Yunis*, the court found that the Government had an interest in protecting not only the contents of the conversations, but also the sources and methods used to collect them. 867 F.2d at 623. The court recognized that–as in cases in which the United States invokes its informant privilege–much of the Government's national security interest in the recorded conversations "lies not so much in the contents of the [Rule 16] conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all." *Id.* The Sixth Circuit has explicitly adopted the *Yunis* and the *Rovario* analysis in adjudicating CIPA Section Four matters. *United States v. Amawi*, 695 F.3d at 470-472; *United States v. Hanna*, 661 F.3d 271, 295 (explicitly following *Yunis*). Other Circuits are in accord, *See Klimavicius-Viloria*, 144 F.3d at 1261; *Pringle*, 751 F.2d at 428.

9

The application of the *Roviaro* standard in the context of classified information is particularly appropriate because classified information is closely analogous to information provided by confidential informants. The gathering of intelligence information "resemble[s] closely the gathering of law enforcement information. The confidentiality of sources and the methods used in both instances are critical. Persons who supply information to the government regarding matters taking place in foreign countries are likely to be located outside the United States. Their safety would immediately be placed in jeopardy if their identity were made public. Revealing such information absent an essential need by a defendant would also result in the drying up of a primary source of information to our intelligence community." *Smith*, 780 F.2d at 1108. The District of Columbia Circuit similarly stated in *Yunis* that "[i]mplicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise 'intelligence sources and methods.'" 867 F.2d at 623. The Supreme Court has "expressly recognized" that the government has "a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Id.* (quoting *CIA v. Sims*, 471 U.S. 159, 175 (1985)). This is particularly true because "if potentially valuable intelligence sources come to think that the [government] will be unable to maintain the confidentiality of its relationship to them, many could well refuse to supply information to the [government] in the first place." *Sims*, 471 U.S. at 175. These "same concerns must inform analyses by district courts in passing on the discoverability of classified information." *Yunis*, 867 F.2d at 623.

In order to establish the existence of the privilege, the Government ordinarily submits a declaration or affidavit executed by an official with classification review authority and asserting the

privilege. *United States v. Rosen*, 557 F.3d 192, 198 (4th Cir. 2009) (rejecting the minority position of the Second Circuit in *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) that an affidavit from the head of a government agency is required to invoke the privilege). See also *United States v. El-Mezain*, 664 F.3d 467, 521-523 (5th Cir. 2011)(lengthy discussion rejecting *Aref* noting that: "…there is no … requirement in CIPA that the governmental privilege must be initiated by an agency head."). In this case, a declaration executed by an official with classification review authority and asserting the classified information privilege will be filed in connection with the classified portion of the memorandum.

### V. THE CLASSIFIED INFORMATION IS NOT DISCOVERABLE BECAUSE IT IS NOT BOTH RELEVANT AND HELPFUL TO THE DEFENSE[4]

BARBARA L. MCQUADE
United States Attorney

By: s/ Ronald W. Waterstreet
RONALD W. WATERSTREET
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9100
Ronald.waterstreet@usdoj.gov

Dated: September 1, 2016

---

[4] All of the information contained the remaining portion of this memorandum is not included in the unclassified version of this motion that was filed electronically on the public docket.

11

CERTIFICATE OF SERVICE

I hereby certify that on Thursday, September 01, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the counsel for the Defendant:

Todd Shanker

s/ Ronald W. Waterstreet
RONALD W. WATERSTREET
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9100
Ronald.waterstreet@usdoj.gov
