UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,                     Cr. No. 16-20098

 v.

                                         Hon. George Caram Steeh

KHALIL ABU RAYYAN,

                 Defendant.

_____/

## RESPONSE TO GOVERNMENT'S MOTION TO WITHHOLD DISCOVERY

Shortly after defendant Khalil Abu-Rayyan notified this Court and opposing counsel that he planned to plead guilty, and months after his repeated requests for discovery, the government has moved for a protective order permitting it to "delete certain classified information from discovery." (R. 94, Gov. Mot., Pg ID 758.) The government gives no real indication what this information contains, other than that, in the government's view, the information is not *both* relevant and helpful, and its disclosure "has the potential of harming national security." (*Id.* at 758–59.) As support, the government cites Fed. R. Crim. P. 16(d)(1) and the Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3 § 4. Rayyan opposes the government's request and asks that the Court require the government to disclose the information discussed in its motion.

1

## I.     The government has not met its high burden for a protective order.

Based on the information available to the defense, the government has not met its burden for a protective order under the cited provisions. Under Rule 16(d), "[a]t any time the court may, *for good cause*, deny, restrict or defer discovery or inspection, or grant other appropriate relief" (emphasis added). But "[p]rotective orders are the exception, not the rule, and appropriate reasons must be given for their entry." *United States v. Stone*, No. 10-20123, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012). Thus, the crux of this rule is that a protective order may be entered only upon a showing of "good cause." *Id.* at *2. Good cause requires "a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity. *Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing*." *Id.* (quotation omitted, emphasis added).

Of course, without seeing the information that the government seeks to "delete" from discovery, Rayyan's counsel cannot fully address whether the government has a colorable claim of privilege. But the Court must hold the government to its burden of pointing to specific harm that would occur if this information is disclosed. The Court must remember that it is not enough for the government to raise broad allegations of harm to national security interests. Instead,

the government bears the burden of providing specific examples or specific articulated reasons for not disclosing this particular information.

## II.    *Roviaro v. United States* **requires disclosure of even protected information if that information is helpful to preparing Rayyan's defense.**

The government also claims that, based on its own review, the withheld portions of discovery are entitled to protection under *Roviaro v. United States*, 353 U.S. 53, 59 (1957). *Roviaro* recognizes a limited privilege for withholding an informant's identity, but that privilege "is limited . . . by 'the fundamental requirements of fairness.'" *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (quoting *Roviaro*, 353 U.S. at 60). If "disclosure of an informer's identity, or of the contents of his communication, *is relevant and helpful to the defense of an accused*, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61 (emphasis added).

Additionally, although the government loosely refers to this information as "classified" under CIPA, the Act contains a very specific definition for that term. Specifically, classified information "means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security and any restricted data, as defined in paragraph r. of section 11 of the Atomic Energy Act of 1954 (42 U.S.C. 2014(y))." 18 U.S.C. App. 3 § 1. The government does not indicate in the portion of its motion available to the defense

3

whether this information is "classified" in the sense that an executive order, statute, or regulation protects its disclosure. This Court should be careful not to rely on the standards under CIPA for any information that does not meet CIPA's definition.

Moreover, the Court must strike the appropriate balance between any legitimate national security interests and the defendant's right to present a defense. In *Roviaro*, for example, the Supreme Court ultimately reversed application of the law enforcement privilege because of the importance of the undisclosed government informant to the defendant's case. 353 U.S. at 65. Further, even if this Court deems full disclosure inappropriate, it should at least allow the defense to have summaries of the basic substance of this discovery. The Fourth Circuit endorsed this approach in *United States v. Abu Ali*, 528 F.3d 210, 254 (4th Cir. 2008). There, the court upheld the decision to allow counsel without security clearance to see the substance of classified communications, along with the dates of those communications, and the parties involved; additionally, defense counsel with security clearance was allowed full access to copies of the classified documents. 528 F.3d at 254. If this Court agrees with the government that full disclosure of the discovery addressed in its motion presents a national security risk, the Court should at a minimum permit Rayyan's attorneys to know the basic substance of this discovery.

**III.    The Court must put itself in the shoes of defense counsel if it conducts an *in camera* review as requested by the government.**

As an initial matter, Rayyan objects to an *in camera* and *ex parte* hearing or review of the government's evidence as depriving the defense of the ability to test the credibility of the government's representations about the discovery it seeks to withhold. Rayyan acknowledges, however, that the Sixth Circuit has previously upheld this procedure as permissible under certain circumstances. *See United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012).

Yet the standard of review for this type of *in camera*, *ex parte* hearing is critical. As the Sixth Circuit emphasized in *Amawi*, when defense counsel cannot view classified material, the Court reviewing the material must put itself in **"the shoes of defense counsel,** the very ones that cannot see the classified record, and **act with a view to their interests**." *Id.* (emphasis added). This standard of review recognizes that "defendants and their counsel, who are in the best position to know whether information would be helpful to their defense, are disadvantaged by not being permitted to see the information—and thus to assist the court in its assessment of the information's helpfulness." *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006). Thus, this standard of review entails "[a]cting as if [the Court] were in essence standby counsel for the defendant" in order to "determine what may be 'relevant and helpful' to them." *Amawi*, 695 F.3d at 471.

Here, the timing of the government's request to "delete" certain discovery raises concerns that the government has information that could potentially benefit Rayyan at trial or at sentencing. In particular, at sentencing, Rayyan expects the government to emphasize comments Rayyan made to two undercover agents working with the FBI who posed as young Muslim women named "Ghaada" and "Jannah" and engaged in an extraordinary campaign of manipulation against Rayyan.

The defense recognizes that the government's concerns about Rayyan predate the undercover agents' involvement in his life. But the government has never indicated that it plans to exclude Rayyan's comments to the undercover agents from its arguments at sentencing. The defense thus intends to counter this evidence with information about how these undercover agents manipulated Rayyan. Consistent with the Sixth Circuit's admonitions in *Amawi*, this Court must put itself in the shoes of defense counsel in reviewing the government's purported "classified" discovery and consider whether this information might assist the defense in corroborating its argument about manipulative behavior on the part of the government, not only at a potential trial, but at sentencing.

## Conclusion

Mr. Rayyan respectfully requests that the Court require the government to turn over the information discussed in its motion to withhold discovery.

Respectfully submitted,

FEDERAL DEFENDER OFFICE
LEGAL AID & DEFENDER ASSN., INC.

/s Todd Shanker
todd_shanker@fd.org
(313) 967-5879

/s Benton Martin
benton_martin@fd.org
(313) 967-5832

Attorneys for Khalil Abu Rayyan
613 Abbott, Fifth Floor
Detroit, MI  48226

Dated:   September 7, 2016

## CERTIFICATE OF SERVICE

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

/s Benton C. Martin
Attorney for Defendant