```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4   UNITED STATES OF AMERICA,

 5              Government,
                                      HONORABLE GEORGE CARAM STEEH
 6        v.
                                      No. 16-20098
 7   KHALIL ABU-RAYYAN,

 8              Defendant.
     _____/
 9
                          SENTENCING HEARING
10
                       Thursday, April 6, 2017
11
                            -   -   -
12

13   APPEARANCES:

14   For the Government:            RONALD W. WATERSTREET, ESQ.
                                    Assistant U.S. Attorney
15

16   For the Defendant:            TODD A. SHANKER, ESQ.

17                            -   -   -

18        To Obtain Certified Transcript, Contact:
          Ronald A. DiBartolomeo, Official Court Reporter
19         Theodore Levin United States Courthouse
            231 West Lafayette Boulevard, Room 238
20               Detroit, Michigan  48226
                      (313) 962-1234
21
        Proceedings recorded by mechanical stenography.
22     Transcript produced by computer-aided transcription.

23

24

25
```

1                          **I   N   D   E   X**

2 _____ Page

3 Sentencing hearing                                        3

4

5

6

7

8

9

10

11

12

13

14

15                        **E   X   H   B   I   T   S**

16 Identification_____ Offered   Received

17

18                    N      O      N      E

19

20

21

22

23

24

25

*16-20098; USA v. KHALIL ABU-RAYYAN*

<table>
<tr><td>1</td><td>Detroit, Michigan</td></tr>
<tr><td>2</td><td>Thursday, April 6, 2017</td></tr>
</table>

1                              Detroit, Michigan

2                              Thursday, April 6, 2017

3

4                      -    -    -

5             THE CLERK:  Case Number 16-2OO98, United

6     States of America versus Khalil Abu-Rayyan.

7             THE COURT:  Good afternoon.

8             MR. WATERSTREET:  Good afternoon.  Ronald

9     Waterstreet on behalf of the United States.

10            THE COURT:  Welcome.

11            MR. SHANKER:  Good afternoon, your Honor.

12    Todd Shanker on behalf of Mr. Khalil Abu-Rayyan who is

13    standing to my right.

14            THE COURT:  Welcome.  This is a continuation

15    of a sentencing hearing that has been taking place over a

16    period of time.  I believe we have arrived at a point

17    where the Court simply has to announce its determination

18    of a sentence.

19            Is there anything that either side wishes to state

20    before the Court makes its ruling?

21            MR. WATERSTREET:  No, your Honor.

22            MR. SHANKER:  Nothing further, your Honor.

23            THE COURT:  All right.  In this case the

24    parties have agreed upon the advisory guideline range that

25    applies to this case, and that constitutes a range of 15

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    to 21 months in length.  The defendant asked the Court to

2    consider imposing a sentence at the low end of that

3    guideline range of 15 months.  The government asks for the

4    Court to grant an upward variance to impose a term of

5    eight years, is it -- eight years for the violation.

6        The Court is directed by the statute to consider

7    the advisory guideline range in this case, and I have,

8    indeed, considered that range, along with the factors that

9    are enumerated at Section 3553(a) in deciding on an

10   appropriate sentence.  I think it would serve the

11   discussion of the Court's consideration in this matter at

12   least by providing some background.

13       In this case, when Mr. Abu-Rayyan was 12 years

14   old, he was referred to counseling because he told his

15   teacher that he dreamed that he had a gun and shot

16   everyone in class.

17       While in school, he had experience of assaultive

18   behavior which resulted in his suspension from school on

19   three or four occasions for fighting.  At age 19, he was

20   in a fight with his brother which resulted in the police

21   being called, and Mr. Abu-Rayyan be detained for some 18

22   hours.

23       At the of age 17, Mr. Abu-Rayyan began using

24   marijuana, and between the ages of 19 and 21, he admitted

25   he was smoking between 10 to 15 marijuana blunts everyday.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          Mr. Abu-Rayyan reports that his childhood was

2     devoid of abuse, and his necessities of life were

3     provided, but he was bullied by his peers.

4          As early as November of 2014, the defendant

5     re-tweeted, liked and commented on acts of terror and

6     martyrdom on behalf of the foreign terrorist organization

7     Islamic State of Iraq and Levant, formally Al-Qaeda Iraq,

8     commonly referred to as ISIL.  His conduct included

9     seeking out internet links to gruesome ISIL videos,

10    posting them on his Twitter accounts, and posting comments

11    after viewing the executions and killings depicted in the

12    ISIL videos.

13          The propaganda on his Twitter account included

14    videos of a Jordanian fighter pilot being burned alive,

15    handcuffed people being executed by being thrown from a

16    high-rise building, the beheading of a Christian in Egypt

17    and news of ISIL victories.

18          On January 22, 2015, the defendant added to his

19    favorites on his Twitter account a photograph of a person

20    about to have his throat slit with a knife.

21          On February 19, 2015, the FBI found a photograph

22    uploaded on the defendant's Twitter account, showing him

23    dressed in camouflage with two similarly dressed

24    individuals, holding a semi-automatic handgun in his right

25    hand, and making an ISIL symbol with the left index

                    *16-20098; USA v. KHALIL ABU-RAYYAN*

1    finger.

2        On October 5, 2015, the defendant purchased a .22

3    caliber revolver from a sporting good store.  In response

4    to a question on the form required by the Bureau of

5    Alcohol, Tobacco and Firearms and Explosives whether he

6    was unlawful user or addicted to marijuana, the defendant

7    falsely stated that he was not.

8        On October 7, 2015, Detroit Police pulled the

9    defendant over for speeding.  They found the .22 caliber

10   revolver in the car, along were four bags of marijuana.

11   Mr. Abu-Rayyan admitted he did not have a concealed weapon

12   license, and he was arrested for carrying a concealed

13   weapon in an automobile and possession of marijuana.

14       Following his arrest, he replaced his cell phone

15   and downloaded more disturbing images, including the ISIL

16   flag, people with firearms with the ISIL flag, people who

17   appeared to be burned alive.  His wallpaper on his new

18   phone was a picture of a man making an ISIL symbol with

19   his left hand while holding a severed head of a woman with

20   his right hand.

21       On November 15th, the defendant attempted to

22   purchase another firearm from a different sporting good

23   retailer.  Again, he lied on the ATF form, and denied that

24   he was a marijuana user.  Due to his pending criminal

25   case, he was not allowed to purchase the firearm.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          Also on November 15th, he and another individual

2     went to the local firing range, rented an AK-47 and AR-15

3     with which they practiced shooting.

4          In the late November 2015, the defendant tweeted

5     photographs of himself firing an AK-47 and an AR-15 type

6     rifle.  He captured -- or he captioned one of the

7     photographs as sahwat hunting, sahwat being a term for

8     Iraquis who oppose ISIL.

9          The defendant admits that at the time that he

10    practiced using these two military type rifles, he was

11    viewing and downloading ISIS propaganda.

12         On December 12, 2015, the defendant sent his

13    brother a message that this would be perfect time to do a

14    istigahhadi, being martyrdom or suicide operation.

15         December of 2015, he also began communicating with

16    a FBI undercover employee on social media about ISIS.  He

17    consistently expressed his support for ISIL, and his

18    desire to commit a martyrdom operation.  He provided

19    detailed descriptions of his plans to behead people and

20    skin them like sheep.

21         By mid-December 2015, he claims that he fell in

22    love with the undercover employee posing as Ghadda, and

23    that he believe he was engaged to be married to her.

24         During his conversations with the undercover

25    employee, whom Abu-Rayyan called Jannah, the defendant

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    stated his desire to shoot up a church near his place of

2    employment.  He said that he had an AK-47 with a 40 round

3    magazine, and described the firearm as a type of machine

4    gun ISIL fighters carry.  He told the undercover employee

5    that his father discovered the items that he had in his

6    the car to carry out the church shooting, including the

7    AK-47, bullets and a mask.  He told the undercover

8    employee that he practiced loading and unloading the gun,

9    and he was targeting the church because many people attend

10   the church, and the church members were barred from

11   carrying firearms inside.  Investigators located a church

12   matching the description given by Mr. Abu-Rayyan in his

13   posts which could accommodate up to 6,000 people.

14        When the undercover employee asked the defendant

15   if he regretted not committing this shooting at the

16   church, he responded, honestly, I regret not doing it.  If

17   I can't do jihad in the middle -- it appears that it would

18   Middle East, I would do jihad over here.

19        In January of 2016, he told the undercover

20   employee that he wanted to conduct a martyrdom operation

21   by killing a police officer who arrested him while that

22   officer was in the hospital.

23        In January of 2016, the defendant also told the

24   undercover employee that it was his dream to behead

25   someone, and that he was excited about shootings and

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    death.

2           January 15, 2016, the defendant pled guilty to the

3    state charge arising out of his arrest, pleading to

4    possession of marijuana, and he was pending trial on the

5    concealed weapons charge.  The state case involved the

6    same conduct involved in this case.

7           On February 26, 2016, he withdrew his guilty plea

8    to the charge of possessing marijuana to enter a plea of

9    guilty to the reduce charge of carrying a concealed

10   weapon.

11          On January 18th, the defendant and the undercover

12   employee had the following conversation, quote, and even

13   my dad, he knows that I support the dawlah, state, a known

14   reference to the Islamic State or ISIS, you know.  He

15   tells me everyday, you know, be careful.  Watch your

16   posting.  Be careful who you talk to.  You know, I told

17   him numerous time that I wanted to make jihad.  I want to

18   do an istishhadi or martyrdom or suicide.  I told my dad

19   that, and he doesn't support it, of course, but he tells

20   me all the time I have to listen to him first.

21          On January 25, 2016, the undercover employee known

22   as Jannah told the defendant that she wanted to die for

23   the sake of Allah because of, quote, seeing my sisters and

24   brothers and young women die in Syria and Iraq like that.

25   The undercover employee also told the defendant that jihad

                    *16-20098; USA v. KHALIL ABU-RAYYAN*

1    is my dream.

2           In January of 2016, the defendant told the

3    undercover employee that Satan speaks to him at night by

4    telling him to burn people alive, tie them up and cut

5    their tongues.

6           February 2, 2016, the defendant told the

7    undercover employee that he was thinking about hanging

8    himself with a rope.  The undercover employee told him

9    it's forbidden for a person to take his own life, but

10   added, like I told you before, you know, when it's for the

11   sake of Allah, when it's jihad, or when it's on our creed

12   for a cause, that's the only time Allah allows it, but not

13   to put your life to waste and just hang yourself like you

14   say you want to do, and that conversation the defendant

15   tells the undercover employee, I would not like to hurt

16   somebody else.

17          February 4, 2016, the investigators executed

18   search warrants at the defendant's residence and place of

19   employment, and his cell phone and computer were seized.

20   Investigators did not find any weapons or ammunition.

21          On February 4th, a criminal complaint entered in

22   this case charging the defendant with possessing a firearm

23   by an unlawful user of a controlled substance.

24          On the 16th of February, the defendant was charged

25   in a two count indictment for making a false statement to

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    acquire a firearm in violation of 18 U.S.C. Section

2    922(a)(6), and possession of a firearm by a probative

3    person in violation of 18 U.S.C. Section 922(g)(3).

4            On March 16th and 24, 2016, the defendant's expert

5    witness Lyle Danuloff, conducted clinical interviews of

6    the defendant in the Wayne County Jail at the defendant's

7    request, also interviewed the defendant's father and

8    stepmother.  In conducting his the evaluation, he reviewed

9    a number of other materials, including conversations

10   between the defendant and the undercover employee.

11           During that interview, the defendant's father made

12   false statements and denied that his son had any trouble

13   in school and falsely claimed that the defendant graduated

14   high school without any suspensions or disciplinary

15   actions against him.

16           March 25, 2016, in a letter addressed to the

17   Court, Dr. Danuloff opined that the defendant was

18   competent to assist in his own defense.

19           Dr. Danuloff issued his psychological evaluation,

20   concluding that the defendant did not exhibit any

21   indications of severe psychological disorder or

22   dysfunction, and that report also found that the defendant

23   has a dependent personality disorder and a cannabis

24   dependence.

25           At the bond hearing, Dr. Danuloff testified,

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    proffered his opinion on the defendant's competency and

2    safety of the community upon his release.  The Court ruled

3    that Dr. Danuloff is not board certified as a forensic

4    psychologist, and was not qualified to testify on the

5    question of the defendant's potential risk of safety of

6    the community if released on bond.

7           Dr. Danuloff found that the defendant had a deep

8    sense of shame and remorse for all of his actions, and

9    strongly denied the intentions that his verbal behavior

10   would indicate on the surface.  He further found that the

11   defendant was psychologically fixated, immature and lonely

12   as an adolescent with compromised marijuana impacting his

13   judgment.

14          On March 14, 2016, the defendant was sentenced to

15   two years probation, 80 hours of community service on the

16   state charges, and on April 18th, this Court denied his

17   motion to be released on bond.

18          This Court also ordered a psychiatric evaluation

19   which was conducted at the Federal Medical Center in

20   Devens, Massachusetts.

21          Dr. Chad Tillbrook, a forensic psychologist,

22   conducted the court ordered evaluation, and found that the

23   defendant did not reveal any thought or speech

24   disorganization indicative of a psychotic disorder.  He

25   did report that the defendant drew parallels between his

*16-20098; USA v. KHALIL ABU-RAYYAN*

1   interest in watching violent photos and videos produced by

2   terrorists, and is interested in watching adult

3   pornography, nothing more than curiosity and interest of

4   something so different from his life, end quote.

5        Dr. Tillbrook diagnosed the defendant with an

6   adjustment disorder, mixed anxiety, depressed mood and

7   cannabis use disorder.  He found the defendant competent

8   to stand trial.

9        He also found that the defendant is not presenting

10  with acute psychiatric symptoms, and is not a substantial

11  risk of causing bodily harm to others or serious damage of

12  property to another due to mental illness.  Inpatient

13  mental health treatment is not indicated at this time.

14       So on August 2nd, the Court held a competency

15  hearing.  The Court adopted the report from Dr. Tillbrook,

16  finding the defendant competent to stand trial.

17       The Court heard oral argument on a renewed motion

18  to be release and denied that motion.

19       The defendant pled guilt to these charges on

20  September 13, 2016, and this -- these violations carried

21  statutory maximum penalties of 10 years.  The Probation

22  Department has calculated a guideline range of 15 to 21

23  months, and the Court has competing requests of a 15 month

24  sentence or a 96 month sentence.

25       Although sentencing begins with the guideline

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    calculation, the Court is required to consider the

2    appropriateness of a guideline sentence, and whether a

3    variance is warranted.  For the reasons that I am

4    discussing, the Court does conclude that an upward

5    variance is called for in this case.

6         The Court must impose a sentence that is

7    sufficient to achieve the statutory purposes of

8    punishment, which includes most importantly here

9    protecting the public from further crimes of the defendant

10   and affording deterrence to criminal conduct.  The

11   sentence imposed must not be greater than necessary to

12   achieve these goals.  The Court has brought discretion in

13   sentencing, and there's no limitation on the information

14   concerning the background, character and conduct of the

15   defendant that the Court may consider.

16        In determining the appropriate sentence here, the

17   Court accepts the government's position that an above

18   guideline sentence is necessary to protect the public, and

19   to deter further conduct, and the Court will address the

20   3553 factors.

21        So Section 3553 requires the Court to impose a

22   sentence which is sufficient, but not greater than

23   necessary to protect the public from further crimes of the

24   defendant.  Given the defendant's prior conduct, dating

25   back to at least November 2014, in which he expressed his

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    support of ISIS, his fascination with murder, beheadings,

2    and savage terrorist attacks, the Court determines that a

3    significant sentence is warranted here.

4         In addition to his stated support of jihadist

5    activities, the defendant made specific statements to the

6    undercover employee that he planned to kill the police

7    officer who arrested him while he was in the hospital, and

8    that he would shoot up a large church near his place of

9    employment.

10        He also emailed his brother that this would be a

11   perfect time to do an istishhadi, being a martyrdom or

12   suicide operation.

13        After he was arrested and tried -- after he was

14   arrested, he tried, but failed to buy another gun

15   illegally, went to the shooting range, fired off an AK-47

16   and an AR-15, and then posted pictures of himself holding

17   those weapons and making the ISIS gesture.

18        The Court is persuaded by the government's

19   argument that the defendant cannot be released, at least

20   not in the near future, without posing a serious risk to

21   the public.  If released, no one can ensure that he will

22   not buy a firearm or a weapon and carry out an ISIS

23   terrorist attack like the ones that he discussed with the

24   undercover employee.

25        The defendant argues that when he viewed and

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    expressed his support for ISIS terrorist activities, and

2    he stated his intention to commit his own ISIS terrorist

3    inspired attacks, these were merely the thoughts of an

4    immature, depressed and marijuana dependent adolescent who

5    has reformed his life and his intentions after spending

6    more than the last year in prison.  He claims that his

7    confinement has allowed him to withdraw from drug abuse,

8    and clarify his thought process.

9            Furthermore, the defendant argues that Dr.

10   Danuloff and Dr. Tillbrook's evaluations support his claim

11   that he poses no risk to the public.

12           The Court can't agree with that characterization.

13   First, as to Dr. Danuloff, the Court previously found that

14   he is not qualified to testify on the issue of the

15   defendant's potential risk of safety to the community,

16   because he's a non-certified forensic psychiatrist, and

17   for other reasons as well as stated on the record by the

18   Court at that bond hearing.

19           Second, as to Dr. Tillbrook, he did not find the

20   defendant posed a risk -- that he did not find that the

21   defendant posed no risk to the public, only that he did

22   not have a psychological disorder that would create risk

23   of him causing harm to others or that would require

24   inpatient mental health treatment.

25           In other words, the defendant could very well

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    harbor evil intentions and a desire so act on those evil

2    motives, but those intentions are not rooted and or caused

3    by psychological disorder.

4          Dr. Tillbrook's analysis that the defendant does

5    not suffered from acute psychiatric symptoms is likely of

6    little relief to the parishioners of the church that he

7    stated he would like shoot up, or to the police officer

8    that he planned to kill while the officer was in the

9    hospital.  Not all criminal conduct can be explained by

10   psychiatric disorders.  In fact, when criminal are deemed

11   insane, they are not held responsible for their criminal

12   activity.

13         Here, the fact that Dr. Tillbrook found that the

14   defendant was competent to stand trial and did not require

15   inpatient mental health treatment, does not explain away

16   his cell phone screen saver photograph of an ISIS

17   terrorist holding the severed head of a woman by her hair,

18   or the countless other ways he expressed support of ISIL

19   jihadist activities over the past several years.

20         Blaming the defendant's obsession with ISIL

21   activities on his depression, as he has done in the

22   sentencing memorandum submitted and during oral argument,

23   does not alleviate the Court's concerns about the real

24   risk that he poses to the community if he is released

25   soon.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1        There may be some correlation between an

2    individual's depression, and that individual's willingness

3    to participate in a martyrdom suicide mission, but the

4    defendant has not convinced the Court that incarceration

5    has allowed him to overcome his depression sufficiently,

6    or that he no longer possesses the threat-- poses a threat

7    to the community.  It's certainly a good thing that he is

8    no longer using marijuana, because he is confined, but

9    there are no guarantees that he will not return to

10    marijuana use upon his release, or that he would no longer

11    be depressed because of the time he has so far spent in

12    prison.

13        Also, although it is likely that the defendant's

14    habit of smoking 10 to 15 blunts of marijuana per day

15    impacted his judgment, the defendant has not come forward

16    with any medical information or explanation that would

17    support his attempts to blame marijuana for sparking his

18    affinity for ISIS propaganda.

19        The Court has carefully considered the video

20    statement that the defendant submitted with his sentencing

21    memorandum, as well as his personal statement that he made

22    at the sentencing hearing, in which he expressed his deep

23    remorse and shame over his criminal conduct, and gave

24    assurances that he never meant to hurt anyone, and never

25    would do so.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          In addition, the Court has considered the many

2     letters that the defendant sent to his family members

3     while in prison to show his remorse and rehabilitation.

4     The government points out that there are no letters to the

5     Court written by any others on his behalf asking for

6     leniency.

7          In his statement to the Court, the defendant said

8     that he purchased the gun solely to protect himself while

9     delivering pizzas in Detroit.

10         He further stated that he accepted full

11    responsibility for the reckless and foolish things that he

12    said and viewed, but that he never meant any of those

13    things that he said, apparently in regard to his support

14    of ISIS and his intentions to participate in terrorist

15    inspired activities.

16         The defendant expressed his profuse apologies to

17    his family, and especially to his father, and lamented

18    that he had let them down and deviated from the true

19    meaning of Islam, which he acknowledged is a peaceful

20    religion, having nothing to do with ISIS.

21         He expressed his view that he had been raised in a

22    good family, and that his father is the epitome of the

23    American dream.  The defendant's statement at sentencing

24    that he was raised by good family, living the American

25    dream, makes his choice to view and support ISIL jihad

*16-20098; USA v. KHALIL ABU-RAYYAN*

1  propaganda while stating his intentions to shoot up a

2  church and kill a police officer all the more disturbing.

3  Just as mental illness cannot explain away his conduct, he

4  cannot blame an abusive or neglected childhood for his

5  conduct either.

6       The defendant's statements that his incarceration

7  over the past year has allowed him to clear his mind, and

8  that he has never posed and will never pose a threat to

9  the public is self-serving, of course, given his current

10  confinement.  While the Court certainly hopes that his

11  statements remorse and rehabilitation are, in fact, true,

12  they amount to too little, too late to persuade the Court

13  that a guideline sentence is sufficient to protect the

14  public.

15       points out in its sentencing memorandum, the

16  Court should not give much weight to an eleventh hour

17  assertion of remorse as any prisoner in his shoes would be

18  willing to do the same, and even considering the letters

19  that he drafted to his family from prison, which he now

20  asserts show his genuine remorse, one of those letters

21  hints at blaming the FBI undercover employee for his

22  predicament, stating that the whole situation was because

23  he wanted to get married.

24       Along these lines, the Court also considers the

25  defendant's argument in his sentencing memorandum and at

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    the sentencing hearing that he was essentially entrapped

2    by the undercover employee to make incriminating

3    statements that he did not really meant to -- in order to

4    impress the informant -- but which he really meant to

5    impress the informant whom he believed was ready to commit

6    jihad because her husband had been killed in Syria by

7    anti-ISIS forces, and that another family member was

8    killed by Shiite ISIS forces in Iran.

9            There is a significant problem with this argument.

10   Abu-Rayyan began viewing and expressing his support of

11   ISIL terrorist activities at least a full year before the

12   informant entered the picture.  Prior to contact with the

13   undercover employee, he attempted buy the gun at issue

14   here, went to the shooting range firing an AK-47, and then

15   posted pictures of himself with the AK-47, and the caption

16   sahwat hunting.

17           Prior to contact with the undercover employee, the

18   defendant sent his brother a text message, including a

19   beheading photograph, and announcing that this would be a

20   perfect time to do an istishhadi.

21           While it is true that he begged the undercover

22   employee not to hurt herself, he also discussed with her

23   his plan to shoot up a church and assassinate a police

24   officer.

25           As the government aptly points out, the defendant

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    may claim he made the disturbing statements merely to

2    impress the undercover employee, but anyone who has been

3    victimized by such an attack would find his ideas far from

4    impressive.

5          The Court is also persuaded by the government's

6    argument that the guideline range does not reflect the

7    threat that he poses to public safety.  The guidelines

8    range in this case is based solely on possessing guns

9    while addicted to marijuana.

10         So part of this Court's consideration of the

11   sentencing factors directs the Court to consider whether a

12   given sentence will afford adequate deterrence to criminal

13   conduct, and as the Sixth Circuit has observed, it is a

14   defendant's sentence, as much as his conviction or

15   negative publicity that provides deterrence.  Deterring

16   those who are contemplating terrorist activities is

17   vindicated by imposing an above guideline sentence here.

18         While many terrorists may be contemplating their

19   own martyrdom operation, as the defendant was in this

20   case, sending the public a message that even the first

21   steps towards committing acts of terrorism may -- will

22   carry serious consequences, may then deter those planning

23   such operations from doing so.  If the defendant is

24   sentenced to a little over a year, as he seeks the

25   Court -- as he requests the Court to do, the Court would

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    be sending a message that those who take initial steps, as

2    in this case, will face only a slight jail term, and then

3    will be quickly release so they can try it again.

4         The defendant argues that the time he has spent in

5    prison is sufficient to deter him from participating in

6    conduct that has put him in the predicament in which he

7    now finds himself.  Whether or not the defendant has been

8    sufficiently deterred from repeating his criminal conduct

9    however, that is only one part of the equation.

10        The other part is whether others are sufficiently

11   deterred, the concept known as general deterrence, and

12   given the conduct at issue here, the Court finds that a 15

13   month sentence simply is not sufficient to deter others

14   from engaging in similar criminal conduct.

15        Another factor that the Court considers, of

16   course, is the seriousness of the offense.  Here, the

17   defendant pled guilty to making a false statement to

18   acquire a firearm in violation of the statute, and

19   possessing a firearm by a prohibitive person.  These

20   violations were based on the defendant's admitted use of

21   marijuana, and his lying about it on the ATF form, and his

22   illegal possession of a gun while using marijuana.  The

23   defendant blames his marijuana habit for making him

24   depress and impeding his judgment.

25        In fact, he claims his addiction to marijuana, in

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    addition to his immaturity and depression, caused him to

2    support ISIS terrorist activities and to discuss with the

3    undercover employee shooting up a church, and killing the

4    police officer who arrested him.  Under the circumstances

5    where he was causing marijuana while buying and possessing

6    a firearm, while viewing and positively commenting on

7    gruesome ISIS terrorist activities like beheadings,

8    burning people alive, his crime becomes much more serious

9    than if he was just buying a gun for personal protection

10   as he argued he was doing at sentence.

11           When the Court considers all of the facts

12   surrounding the defendant's illegal purchase and

13   possession of a gun while heavily using marijuana, his

14   crimes are a matter of significant seriousness.  The most

15   compelling aggravating factor in assessing the seriousness

16   of his offense, is that shortly after he was arrested, he

17   attempted to buy another firearm and went to the firing

18   range, practicing the use of an AK-47, and then posted

19   pictures of himself holding the AK-47.  Given his

20   conducts, his illegal possession of a firearm and his

21   false denial of his marijuana use to acquire a firearm,

22   are serious offenses requiring a significant upward

23   variance from the guideline sentence, especially because

24   these behaviors occurred while the defendant was engaged

25   in the threatening conversations discussed above.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1           Finally, Section 3553(a) instructs the Court to

2     consider providing the defendant with needed educational,

3     vocational training, medical care, other correctional

4     treatment in the most effective way.  The Court is

5     mindful, however, as the defendant points out, that

6     imprisonment is not an appropriate means of promoting

7     correction and rehabilitation.

8           Both Dr. Danuloff and Dr. Tillbrook recommended

9     mental health counseling.  The Pre-Sentence Investigation

10    Report noted that the defendant has a significant

11    substance abuse history, for which treatment may be

12    beneficial.  The Court may recommend that the defendant

13    receive mental health and substance abuse treatment while

14    incarcerated, and in this way may improve the expectation

15    that the defendant can be safely released into the

16    community at a future day.

17          The defendant seeks to rely on two Rule 11 plea

18    agreements, one filed in this district, the other an

19    unfiled document which, until introduced at the sentencing

20    hearing, was not a matter of public record.

21          The defendant argues these plea agreements support

22    the imposition of a guideline sentence here in order for

23    this defendant to be sentenced in parity with those

24    sentenced for criminal -- for similar crimes.

25          The government responds that this Court cannot

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    rely on those Rule 11 plea agreements in determining an

2    appropriate sentence here, as the Court simply does not

3    have enough facts regarding those agreements before it.

4         As the government points out, those plea

5    agreements may be based on many factors, like the

6    inadmissibility of evidence, the unavailability of

7    witnesses, whether the defendant was facing deportation,

8    whether new case law impeded prosecution, whether

9    exculpatory evidence existed, and whether the defendant

10   was cooperating.

11        Based upon the plethora of information that might

12   have informed those plea agreements, for which the parties

13   and the Court are not privy, those plea agreements are not

14   relevant, and do not form a basis for the Court's

15   sentencing decision in this case.

16        After the sentencing hearing in this case, defense

17   counsel filed an addendum under seal.  The Court refers to

18   that addendum here without sealing this order as there is

19   no reason why the matter should not be a matter of public

20   record, and in that addendum, defense states that the

21   record in the case of United States versus Gregerson,

22   16-20552, now indicates that the plea agreement in that

23   case pending before Judge Tarnow did not involve

24   cooperation by the defendant.  True or not, the plea

25   agreement in Gregerson has no bearing on this matter.  He

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    is not a co-defendant here, and is not charged with the

2    same crimes.

3        At oral argument, the defendant argued that his

4    conduct was protected by the First Amendment, and cited

5    United States versus Shehadeh.  Shehadeh does not support

6    the argument that a guidelines sentence is warranted here.

7        In that case the jury convicted Shehadeh of three

8    counts of making materially false statements to government

9    agents, and for lying repeatedly to federal agents about

10   his attempt to travel to Pakistan in 2008 to join a

11   violent insurgent group of Islamist terrorists.

12       At sentencing, the Court granted upward variance

13   from the guidelines range because of the seriousness of

14   his conduct which involved attempting to join the army,

15   while stating that his intention to -- stating his

16   intention to two friends that he was doing so to join

17   violent -- a violent international jihad, and to gun down

18   his comrades.

19       It is true, as the defense quoted at trial, the

20   sentencing judge in that case specifically noted that the

21   Court does not find the fact that Shehadeh created and

22   administered websites regurgitating certain jihadist

23   propaganda to be an appropriate basis for punishment

24   consistent with the First Amendment, but the defendant's

25   statements to his friends about his evil intentions to

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    commit jihad, combined with the steps that he took towards

2    that end by attempting to join the army was sufficient to

3    support an upward variance.  Although the sentencing

4    guidelines called for a sentence of 63 to 78 months in

5    that case, the court imposed an above guideline sentence

6    of 156 months, amounting to approximately eight years over

7    and above the advisory range.

8         Like Shehadeh, here the sentencing variance is not

9    based on the defendant's mere trolling of ISIS propaganda,

10   but it's based on the fact that he was posting and stating

11   his support of ISIS terrorist activity at the same time he

12   was purchasing a gun, attempting to purchase another gun,

13   practicing shooting at the firing range, posting pictures

14   of himself, and at the same time telling the undercover

15   employee that he wanted to shoot up the church and kill

16   the police officer while officer was in the hospital.

17   This is not merely viewing or maintaining an ISIS website,

18   as the Shehadeh court found was insufficient, standing

19   alone, to support an upward variance.  Rather, this is the

20   sort of serious conduct that the Shehadeh court found was

21   sufficient to vary upwards to give an above guideline

22   sentence.

23        The Supreme Court has held that a defendant may be

24   the subject -- may be subject to an enhanced sentence

25   because his crime is based on the race of his victim, and

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    has rejected arguments that such consideration penalizes

2    offensive thought in violation of the defendant's First

3    Amendment rights.  The Supreme Court has observed that the

4    First Amendment does not prohibit the evidentiary use of

5    speech to establish the elements of a crime or to prove

6    motive or intent.

7            So too here.  It is appropriate for the Court to

8    consider the Twitter tweets, the ISIS propaganda

9    downloaded to his cell phone, which included the wallpaper

10   on his phone, the severed head of a woman in that photo,

11   as it informs the Court's consideration of what he may

12   have intended when he purchased and attempted to purchase

13   a firearm, when he practiced shooting military type

14   weapons, when he told his brother that he wanted to

15   participate in a martyrdom operation, and when he

16   expressed his plans to murder innocent victims to the

17   undercover employee.

18           As the Supreme Court has noted, a defendant's

19   membership in an organization that endorses the killing of

20   any identifiable group may be relevant to the

21   determination, and to whether that defendant will be

22   dangerous in the future.

23           While defense counsel is correct that the First

24   Amendment may protect the mere viewing and dissemination

25   of ISIS propaganda, when that viewing is combined with

1   conduct suggesting an intention to carry out jihadist

2   activities, the Court is well within its realm when it

3   considers those background facts to inform its

4   determination of defendant's motives and intent.

5          Finally, the Court considers the defense

6   counsel's argument made a sentencing on March 13th, that

7   the government waived its argument for an upward variance

8   because the government did not file formal objections to

9   Pre-Sentence Investigation Report recommending a guideline

10   sentence.  Notice that the government is seeking an upward

11   variance is sufficient when set forth in the government's

12   prehearing submission as provided by Federal Rule of

13   Criminal Procedure at 32(h).  The notice need not be in

14   formal objections to the PSR, notice in a sentencing

15   memorandum will suffice, as decided in United States

16   versus Gleason, at 277 Federal Appendix 536 at Page 543, a

17   Sixth Circuit case in 2008, affirming an upward variance

18   based on bad conduct after the offense discussed in the

19   government's sentencing memorandum.

20          The government filed a sentencing memorandum on

21   March 2, 2017 seeking an upward variance and asking for

22   the sentence of 96 months.  The defendant responded to

23   that memorandum at two sentencing hearings, the first held

24   on the 13th of March, and the second two weeks later on

25   March 27th.  Those two hearings span nearly four hours.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          The defense counsel spoke at great length at

2     both.  In addition to his thorough sentencing memorandum

3     and argument at the two sentencing hearings, defense

4     counsel also submitted an addendum in support of his

5     sentencing memorandum on March 20, 2017, which the Court

6     has considered.

7          Under all of these circumstances, the defendant

8     had sufficient notice that the government intended to seek

9     an upward variance.  There's no prejudice to the defendant

10    because notice was given in that memorandum rather than in

11    objections to the PSR.

12         In reaching its decision today, the Court

13    recognizes that the advisory range is 15 to 21 months, and

14    that this range still serves as grounding for the specific

15    period to be chosen by the Court in determining the length

16    of confinement.  The defendant's significant work history,

17    strong family support, the expressions of abject remorse

18    supports the idea that a sentence can be effective to

19    accomplish the purposes of Section 3553(a) with a period

20    that is less than that asked for by the government, but

21    significantly more than that advocated by the defendant.

22         In sum, the above guidelines sentence in this

23    case is no greater than necessary, and will be sufficient

24    to realize the objectives of Section 3553(a) to protect

25    the public, deter the criminal conduct, and to recognize

*16-20098; USA v. KHALIL ABU-RAYYAN*

1     the seriousness of the offense.

2                 Accordingly, and pursuant to the Sentencing

3     Reform Act of 1984, the Court, in considering the

4     guidelines and the factors contained at Section 3553(a),

5     will commit the defendant to the custody of the Bureau of

6     Prisons for a term of 60 months on both Counts 1 and 2

7     concurrently.

8                 Upon release from prison, the defendant will be

9     placed on a term of supervised release for a period of

10    three years on each count, also to be served concurrently.

11                The Court will waive the imposition of a fine,

12    cost of confinement, and the cost of supervision given his

13    lack of resources.

14                It is further ordered that the defendant shall

15    pay a special assessment in the amount of $200.00, which

16    is due immediately.

17                Mandatory drug testing provision is ordered.

18                While on supervision, the defendant shall --

19    well, actually during his term of confinement, the Court

20    will recommend to the Bureau of Prisons that he be

21    confined at a facility offering both mental health and

22    substance abuse treatment while in custody, and as it

23    relates to the substance abuse treatment, the Court will

24    recommend specifically the 500 hour comprehensive drug

25    treatment program.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1        During his supervision, the Court will also

2   adopt all of the standard conditions of supervision that

3   have been adopted by the Eastern District of Michigan, and

4   the following special conditions due to the nature of the

5   offense, and defendant's substance abuse and mental health

6   issues.

7        The defendant shall first, not use or possess

8   alcohol in any consumable form, nor shall he be in the

9   social company of anyone whom he knows to be in possession

10  of alcohol or illegal drugs, or frequent an establishment

11  where alcohol is served for consumption on the premises

12  with the exception of restaurants.

13       The defendant will be ordered to participate in

14  a program approved by Probation for substance abuse, which

15  may include testing to make sure that he has not reverted

16  to the use of drugs or alcohol.

17       The defendant shall participate in a program

18  approved by Probation for mental health counseling which

19  may include anger management.

20       The defendant will be required to take all

21  medications prescribed by a physician, and whose care he

22  is under, including a psychiatrist in the doses and at the

23  times proposed.  If the defendant is prescribed

24  medication, he shall take it, and the defendant shall not

25  discontinue his medication without medical advice.

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          Anything else that you believe sentence ought to

2     include Ms. Connelly?

3                    **MS. CONNELLY:**  No, your Honor.  Thank you.

4                    **THE COURT:**  Okay.  Mr. Waterstreet?

5                    **MR. WATERSTREET:**  Your Honor, as to one other

6     condition, perhaps supervised release, would be his

7     limitation on internet use.  It's commonly used in the

8     child exploitation cases where the Court can order that

9     the defendant be limited to only one account, and that

10    account can be limited to what items he can view.

11         His problems arose as a result of his viewing

12    things that the Court deemed to be frightening, and so

13    there are certain factors under supervised release that he

14    can use solely for legal search, outside employment,

15    specific assignments of educational institutions, type

16    email messages without electronic files or images embedded

17    in them, and he can only have access through one internet

18    capable device, and he shall provide the probation officer

19    with accurate information concerning the computer system,

20    and the ip address.

21         It's a way to be monitor him so that we're not

22    back several years down the road making the same arguments

23    that he was depressed, and started following the same line

24    of documents.

25                    **THE COURT:**  Mr. Shanker, do you have

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    opposition to that?

2             **MR. SHANKER:**  Well, your Honor, if this

3    provision were to be added, I would just request that the

4    Probation Department have the discretion to say at some

5    point, I don't think we need to monitor that anymore,

6    because I don't it want to inhibit his ability to go to

7    school or to work or things like that that are going to

8    help him in many other ways.

9             So, you know, I see -- I hear what the government

10   is saying, and I can understand that condition being

11   imposed, but I would just like to make sure that there is

12   this discretion to the probation officer that, you know,

13   maybe he can go the probation officer, and say this

14   condition is not going to work for me, but maybe we can do

15   this, just some kind of discretion.

16            **THE COURT:**  I think that makes sense.  So we

17   will include the provision with an indication that it

18   shall be a condition as long as the Probation Department

19   feels it necessary to maintain some kind of supervisory

20   monitoring.

21            Any objections for the record that have not been

22   voiced previously, Mr. Waterstreet?

23            **MR. WATERSTREET:**  Not another objection, your

24   Honor, but just as a point of order.  There was a

25   condition that the defendant agreed to forfeiture of

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    items, and there was an amended stipulated order of

2    forfeiture on March 13, 2017 that was ordered by the

3    Court.

4         I know that oftentimes in the sentencing, the

5    court talks about fine, restitution and forfeiture.  I

6    just want to make sure that forfeiture is made part of

7    sentencing in this particular matter as well.

8              **THE COURT:**  All right.  So we need to enter a

9    final order?

10              **MR. WATERSTREET:**  Yes, your Honor.

11              **THE COURT:**  Okay.  Any objection to that, Mr.

12   Shanker?

13              **MR. SHANKER:**  Your Honor, I don't have any

14   objection to what Mr. Abu-Rayyan has already signed and

15   agreed to.  So I don't have any problem with that aspect

16   of it.

17         I do just want to make sure that the family gets

18   their computers back, because they got all of that

19   equipment, and they have been waiting, and I think it's

20   only fair that they get that back now as soon as possible.

21              **MR. WATERSTREET:**  The forfeiture is not

22   concerned with the computers.  It is the firearm and the

23   ammunition.

24              **MR. SHANKER:**  No objection.

25              **THE COURT:**  Do you have any objection

*16-20098; USA v. KHALIL ABU-RAYYAN*

1 directing the return of those items that belong to the

2 family members?

3     **MR. WATERSTREET:**  Once I make sure that all

4 the evidentiary items are taken care of, I have no problem

5 with the return.

6     **THE COURT:**  All right.  Anything else, Mr.

7 Shanker?

8     **MR. SHANKER:**  Well, as far as objections go,

9 your Honor, there was a lot said today in this order, and

10 I would like to get a transcript and review it, but I

11 would maintain the objections and arguments that I made

12 before, but I do want to take a look at the transcript

13 before I make any final -- if there are any additional

14 objections.

15     **THE COURT:**  Okay.  That would be achievable,

16 although Mr. DiBartolomeo is in the middle of a trial, and

17 he as been having to provide daily copies.  So I'm not

18 sure how long it will take, but we'll allow you to file

19 those objections when you -- within how many days of

20 receiving the transcripts?

21     **MR. SHANKER:**  Two weeks.

22     **THE COURT:**  Okay.  That would be great.

23 Mr. Waterstreet?

24     **MR. WATERSTREET:**  So I take that as to be his

25 Bostic statement, that the Court is giving him two weeks

*16-20098; USA v. KHALIL ABU-RAYYAN*

1     to file a Bostic statement, is that my understanding?

2                **THE COURT:**  Yes, I think that's what it

3     means.

4                **MR. WATERSTREET:**  Okay.  I just want to make

5     sure.

6           And then the other thing, your Honor, the

7     defendant did not enter into a Rule 11 plea agreement.  He

8     still has appellate rights.

9                **THE COURT:**  Right.  I was just about to get

10    there.

11               **MR. WATERSTREET:**  Thank you.

12              **THE COURT:**  So Mr. Abu-Rayyan, you should be

13    advised that you have a right to appeal the conviction and

14    sentence imposed by the Court --

15              **THE DEFENDANT:**  Yes.

16              **THE COURT:**  -- in this case.  In order to do

17    so, you have act within the next 14 days by notifying the

18    clerk of the court of your desire to pursue an appeal.

19             **THE DEFENDANT:**  Yes, your Honor.

20              **THE COURT:**  In the meantime, I know you're,

21    of course, not overly excited about the term that you're

22    ordered to serve.  There is a lot of programming in

23    federal system that is available to people who have issues

24    as you've had in the past, and that programming can

25    assist, I think, in helping you avoid making mistakes like

*16-20098; USA v. KHALIL ABU-RAYYAN*

1    this in the future, if you want to take advantage of those

2    programs, and one of them is the substance abuse program.

3    There's also mental health treatment, including anger

4    management, that is available, and I think would be of

5    real help to you.

6         I've been impressed.  I was impressed with your

7    statement made at the last hearing, but obviously -- I

8    mean, obviously, you have some issues that need to be

9    resolved in order for you to have a more fulfilling life,

10   and for the Court to be comfortable that's you're not

11   coming out in the same condition that you went in, and

12   that you can provide some comfort to the people in the

13   community that you will be behave in a way that is safe.

14        So I would recommend those programs to you.  Look

15   up what there is, and signed up for as much as you can

16   sign up for, okay?  And I will wish you good luck, sir.

17             **MR. SHANKER:**  Your Honor, I did want to get a

18   recommendation from your Honor on -- he's requesting

19   Milan, and if he does not qualify for that facility, then

20   Pekin FCI in Illinois.

21             **THE COURT:**  Okay.  I think Milan has both

22   mental health and comprehensive drug program, right?

23             **MS. CONNELLY:**  I know it has a drug program.

24   I'm not sure as to mental health.  What was the second

25   facility?

*16-20098; USA v. KHALIL ABU-RAYYAN*

1          **MR. SHANKER:**  Pekin.

2          **THE COURT:**  Should I make that recommendation

3     as an alternative?

4          **MR. SHANKER:**  Yes.

5          **THE COURT:**  Okay.  I'll be happy to do  that.

6          **MR. SHANKER:**  And the other thing is that the

7     notice of appeal is due within 14 days, but I will be

8     filing objections or maybe within 14 days of receipt of

9     the transcript.  So would you just want us to file for and

10    extension of time to file the notice of appeal?

11         **THE COURT:**  Yes, you perfect those appellate

12    rights as you see fit.

13         **MR. SHANKER:**  Thank you, your Honor.

14         **THE COURT:**  Okay.  All right.  Well then, the

15    Court will order that the sentence be imposed as stated on

16    the record, and again, I wish you good luck.

17         **THE DEFENDANT:**  Thank you, your Honor.

18

19              (Proceedings concluded.)

20              **-   -   -**

21

22

23

24

25


                 *16-20098; USA v. KHALIL ABU-RAYYAN*

1                    **C E R T I F I C A T I O N**

2              I, Ronald A. DiBartolomeo, official court

3       reporter for the United States District Court, Eastern

4       District of Michigan, Southern Division, appointed

5       pursuant to the provisions of Title 28, United States

6       Code, Section 753, do hereby certify that the foregoing is

7       a correct transcript of the proceedings in the

8       above-entitled cause on the date hereinbefore set forth.

9              I do further certify that the foregoing

10      transcript has been prepared by me or under my direction.

11

12      _____          _____
        Ronald A. DiBartolomeo, CSR                    Date
13      Official Court Reporter

14                              -   -   -

15

16

17

18

19

20

21

22

23

24

25


                    *16-20098; USA v. KHALIL ABU-RAYYAN*