# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 19, 2018

Mr. Andrew Goetz
Mr. Ronald W. Waterstreet
United States Attorneys Office
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226

Ms. Jessica Lynn Lefort
Mr. Todd Shanker
Federal Defender Office
613 Abbott Street, Fifth Floor
Detroit, MI 48226

            Re: Case No. 17-1447, *USA v. Khalil Rayyan*
                Originating Case No. : 2:16-cr-20098-1

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Yours very truly,

                              Deborah S. Hunt, Clerk


                              Cathryn Lovely
                              Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0054p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, *v.* KHALIL ABU RAYYAN, *Defendant-Appellant.* | ⎫<br>⎬<br>⎭ | No. 17-1447 |

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cr-20098-1—George Caram Steeh, District Judge.

Argued: March 15, 2018

Decided and Filed: March 19, 2018

Before: MERRITT and SUTTON, Circuit Judges; CLELAND, District Judge.<sup>*</sup>

_____

**COUNSEL**

**ARGUED:** Jessica LeFort, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Jessica LeFort, Todd Shanker, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

---

<sup>*</sup>The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Case 2:16-cr-20098-GCS-RSW ECF No. 121 PageID.1366 Filed 03/19/18 Page 3 of 10
Case: 17-1447 Document: 25-2 Filed: 03/19/2018 Page: 2 (3 of 10)

No. 17-1447                     United States v. Rayyan                              Page 2

## OPINION

SUTTON, Circuit Judge. Khalil Abu Rayyan pleaded guilty to federal gun charges. The Sentencing Guidelines recommended a sentence between 15 and 21 months. The government asked for a sentence of 96 months on the ground (among others) that Rayyan at one point had planned to attack a local church. After a three-day hearing, the district court imposed a sentence of 60 months, all explained in a 33-page opinion. Although Rayyan's challenge to that sentence raises not-inconsequential considerations—a substantial upward variance based in part on uncharged conduct and a defendant's online viewing habits and online communications—Judge Steeh's careful handling of this case does not exceed the discretion that sentencing law delegates to the district courts. We affirm.

I.

Rayyan had an affinity for the Islamic State (sometimes known as ISIS or ISIL) and showed it by watching online content that glorified its exploits. He watched one video entitled "Kill them wherever you find them" five times, and he called it "the best one yet." R. 107-2 at 2–3. He featured a photo depicting a jihad-inspired execution on his Twitter account. And he requested links to videos depicting Islamic State fighters throwing prisoners from the tops of buildings. Watching them "made [his] day." R. 107-1 at 3.

Over time, his apparent sympathy for Islamic State propaganda ran the risk of inspiring real-world action. On one occasion, Rayyan posted a photo online showing him brandishing a pistol in one hand while making a pro-Islamic State hand gesture with the other.

The FBI noticed. In May 2015, it began monitoring Rayyan's activities. In October of that year, they noticed that Rayyan had purchased a .22 caliber revolver at a sporting goods store. In doing so, he filled out a federal form declaring that he did not use illegal drugs. Two days later, Detroit police officers pulled him over for speeding. They found the revolver on the floor and marijuana hidden under the dash. Rayyan did not have a concealed pistol license or a medical marijuana card. The officers arrested him. He admitted that he had smoked marijuana

Case 2:16-cr-20098-GCS-RSW  ECF No. 121 PageID.1367 Filed 03/19/18 Page 4 of 10
Case: 17-1447  Document: 25-2  Filed: 03/15/2018  Page: 3  (4 of 10)

No. 17-1447  United States v. Rayyan  Page 3

regularly for years.  After the arrest, he bought a new cell phone and downloaded more Islamic State propaganda.

Rayyan tried to buy another firearm a month later.  Again he declared he was not a habitual drug user when filling out the federal form.  This time, the store would not sell him the gun due to his previous arrest.  Unable to buy a gun, Rayyan and a friend went to a firing range, rented an AR-15 and an AK-47, and used them both at the range.  Rayyan posted a photo of himself online holding the AK-47 and making a pro-Islamic State hand gesture.  He captioned the photo "Sahwat hunting," Arabic (and English) for hunting Iraqis unsympathetic to the Islamic State.  R. 88-4.

In December, a young woman from Cleveland contacted the FBI about some online conversations she had with Rayyan through his Twitter account, which included the photos and videos described above.  After she passed along the Twitter account to the FBI, the Bureau told her to cut off communications with Rayyan.

Soon after, an undercover FBI employee posing as a 19-year-old woman who sympathized with the Islamic State messaged him.  Rayyan told the agent a number of disturbing things.  He claimed that he had "planned out" an attack on a large church near where he worked and described making preparations.  R. 107-3 at 3.  He thought the church would make a good target because "people are not allowed to carry guns in church," and "it would make the news." *Id.* at 6.  He never carried out his plan.  But he "regret[ted] not doing it."  If he could not "do jihad [in] the midd[le] east," he wanted to "do . . . jihad over here." *Id.* at 7.  He claimed he "would[']ve killed every last one of them[.]  Especially the wom[e]n and children." *Id.* at 14.

Later that month, he told the undercover agent that he wanted to murder one of the officers who arrested him.

The FBI arrested him in February of 2016.  A search of his phone revealed more pro-Islamic State materials.  A grand jury indicted him for violating 18 U.S.C. § 922(a)(6), which prohibits making a false statement while purchasing a firearm, and § 922(g)(3), which prohibits a person who regularly uses an unlawful controlled substance from possessing a firearm.

Case 2:16-cr-20098-GCS-RSW ECF No. 121 PageID.1368 Filed 03/19/18 Page 5 of 10
Case: 17-1447 Document: 29-2 Filed: 03/15/2018 Page: 4 (5 of 10)

No. 17-1447                      *United States v. Rayyan*                      Page 4

Rayyan pleaded guilty. The probation office calculated the guidelines range and recommended a 15 to 21 month sentence. The government urged an upward variance to 96 months. The district court sentenced him to 60 months due to the risk he posed to the public, the need to deter others from engaging in similar conduct, and the severity of his crime. Rayyan appealed, challenging the procedural and substantive reasonableness of his sentence.

II.

*Procedural Reasonableness*. The first requirement of a legitimate criminal sentence is a process-driven one. The court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). We review a district court's efforts to touch each of these bases for abuse of discretion, keeping in mind that factual findings will stand unless clearly erroneous and legal conclusions will stand unless our fresh review leads to a contrary conclusion. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

No reversible error occurred. The district court calculated the correct guidelines range. The court showed that it did not consider the range mandatory by varying upwards. It discussed the sentencing factors found in 18 U.S.C. § 3553 with both parties at length and walked through each of them in its sentencing opinion. And it did not use erroneous facts: The evidence shows that Rayyan took an interest in a terrorist organization, lied to obtain a firearm, lied again while trying to buy another firearm, rented rifles for target practice while under investigation for firearms-related crimes, and discussed carrying out his own attacks with a woman he met online. The district court reasonably found that the comments Rayyan made were more than just youthful bluster meant to woo a like-minded woman; he did, after all, send similar messages to his brother describing the "perfect time" to carry out a martyrdom operation. R. 88-5 at 2. The top, middle, and bottom line is that Rayyan exhibited characteristics that the district court needed to take seriously: an affinity for terrorism, a history of thinking through how he would conduct his own attacks, and a willingness to flout the law to obtain firearms. Having found all three traits in the same person, the district court had a permissible basis for varying from the

recommended guidelines range and gave legitimate explanations for doing so: to protect the public from Rayyan, to deter others from following his path, and to reflect how serious the conduct was. This was a procedurally sound sentence.

Rayyan resists this conclusion on several grounds. He argues that the district court, in calculating his guidelines range, erred by refusing to grant him a one-point reduction under § 3E1.1(b) for cooperation. "[U]pon motion of the government," § 3E1.1(b) permits the district court to grant a one-point reduction if the defendant spares the government from "preparing for trial" by "timely notifying" it of his intention to plead guilty. U.S.S.G. § 3E1.1(b). The government has control over whether to ask for the reduction because it occupies the "best position" from which to observe whether the defendant assisted in a way that preserves trial resources. *Id.* §3E1.1 cmt. 6. The guidelines commentary clarifies that "[t]he government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." *Id.* § 3E1.1(b) cmt. 6.

The court did not abuse its discretion in permitting the government to withhold a recommendation that Rayyan receive a one-point reduction. We trust that the government prepared for trial during the six months before Rayyan's notification because it told the district court (and us) as much. As proof, the government points to a detailed motion in limine that it filed to foreclose an entrapment defense at trial. The government filed it the same day that Rayyan notified them that he intended to plead guilty. All of this meant that prosecutors expended resources researching and drafting a motion that they would not have drafted had Rayyan notified them of his intent to plead guilty earlier.

Rayyan counters that the government filed frivolous motions in order to show that it had prepared for trial. But the government's motion in limine was not remotely frivolous. In his pleadings, Rayyan presented himself as a wayward youth whose incriminating statements "were prompted by the manipulation" of an undercover agent. R. 51 at 2. That sounds like a defendant who claims he lacked a predisposition to commit the crime and was induced to commit it by the government—the two elements of an entrapment defense. *See United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002).

Rayyan argues that the district court violated the Fifth and Sixth Amendment when it enhanced his sentence based on uncharged conduct. But the Supreme Court has confirmed that sentencing courts may look to uncharged criminal conduct, indeed even acquitted conduct, to enhance a sentence within the statutorily authorized range. *See, e.g.*, *Witte v. United States*, 515 U.S. 389, 399–400 (1995); *cf. United States v. Watts*, 519 U.S. 148, 156–57 (1997) (acquitted conduct). We have done the same. *See, e.g.*, *United States v. Alsante*, 812 F.3d 544, 550 (6th Cir. 2016); *cf. United States v. White*, 551 F.3d 381, 382 (6th Cir. 2008) (en banc).

Rayyan maintains that the First Amendment protects his online viewing habits and online statements and that the district court had no right to base its upward variance on what he claims are nothing more than thought crimes. But it's an overstatement to say that he was sentenced based only on his thoughts. A defendant may have a right to post more or less what he wants. But the government may hold defendants to account for what they say if that speech and related conduct reveals a criminal element, a motive, or a factor that aggravates a sentence. *See Wisconsin v. Mitchell*, 508 U.S. 476, 486–490 (1993); *Dawson v. Delaware*, 503 U.S. 159, 166 (1992). The content found in Rayyan's messages, phone, and social media profiles all directly related to the § 3553(a) analysis: It shed light on what sort of danger Rayyan presented to the public, how severe his conduct was, and what kind of sentence would be needed to deter other individuals from heading down the same path.

Rayyan also claims that the district court should have given more weight to a mental health assessment that found that he did not have a psychological disorder that rendered him dangerous. True enough, two psychologists, one hired by Rayyan and one hired by the government, concluded that Rayyan did not suffer from a mental illness that would predispose him towards violence. But as the district court accurately pointed out, mentally healthy people may harbor evil intentions that they want to turn into action. Based on the evidence before it, the district court did not err, clearly or otherwise, when it found that Rayyan presented a serious risk to the community.

Rayyan argues that the district court should not "conflate" the occasions when he committed his firearms offenses with the occasions when he discussed the possibility of carrying out attacks. Why not? Taken together, the two pieces of evidence raised the stakes. To decide

whether Rayyan posed a greater threat to the public than his firearms offenses might suggest in isolation, the district court considered the offenses in context. That meant considering the evidence uncovered in the FBI's investigation. The investigation uncovered a pattern of conduct that began before the FBI grew suspicious of his online activity in May 2015 and ended with his arrest in February 2016. The district court could not have understood the full import of Rayyan's firearms felonies without looking at the entire pattern. The court committed no error when it refused to segment this sad but stark saga into artificial chapters.

Rayyan points to another defendant sentenced by another judge (Judge Tarnow) for similar conduct to argue that the court abused its discretion by imposing a higher sentence on Rayyan. But § 3553(a)(6) concerns national disparities within a class of similar defendants, not disparities between one defendant and another. *United States v. Simmons*, 501 F.3d 620, 623–24 (6th Cir. 2007). The district court was free to focus on the risks and circumstances of the defendant in front of him, not the one sentenced by another judge.

*Substantive Reasonableness*. A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals). The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness. It's a complaint that the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual. Needful to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much. *Gall*, 552 U.S. at 51.

Nothing of the sort—no abuse of discretion, that is—occurred. Yes, this five-year sentence amounted to a significant upward variance from a modest guidelines range. But Judge Steeh appreciated that reality and devoted three days of hearings, considerable briefing, and a 33-page opinion to the issue. The point of the *Booker* line of cases is that district courts should not—in truth, may not—lash themselves to the guidelines range; they must independently apply the § 3553(a) factors to each defendant to determine an appropriate sentence. It sometimes will happen that this independent inquiry will lead to a sentence below the guidelines, sometimes above them, and sometimes within them. But it remains a constitutionally mandated

Case 2:16-cr-20098-GCS-RSW ECF No. 121 PageID.1372 Filed 03/19/18 Page 9 of 10
Case: 17-1447 Document: 29-2 Filed: 03/15/2018 Page: 8 (9 of 10)

No. 17-1447        *United States v. Rayyan*        Page 8

independent inquiry all the same, and we should be loath to override that required exercise of judgment lightly.

In this instance, the court imposed a stiff, but reasonable through it all, five-year sentence. It reasoned that a man who repeatedly broke federal law to obtain firearms, reveled online about the exploits of a terrorist group, and confided in others that he had planned to carry out violent attacks of his own presented a danger to the public. The judge reasonably thought a substantial sentence would deter like-minded sympathizers from taking even the first steps toward transforming sympathy into action. And the judge reasonably found that the crimes were severe enough to warrant an upward variance in light of the fact that Rayyan, undeterred by one firearm-related arrest, committed the same two crimes a month later. The district court properly considered all of the factors, balanced them, and imposed a reasonable sentence. We see no basis for second guessing that judgment.

For these reasons, we affirm the district court's sentence.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-1447

UNITED STATES OF AMERICA,
    Plaintiff - Appellee,

v.

KHALIL ABU RAYYAN,
    Defendant - Appellant.

> FILED
> Mar 19, 2018
> DEBORAH S. HUNT, Clerk

Before: MERRITT and SUTTON, Circuit Judges; CLELAND, District Judge.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the sentence imposed by the district court is AFFIRMED.

                                        ENTERED BY ORDER OF THE COURT

                                        Deborah S. Hunt, Clerk